CK Lee, *to be admitted pro hac vice*
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
cklee@leelitigation.com

Nadir O. Ahmed, Esq.
Cal. Bar No. 290810
401 West A Street, # 1100
San Diego CA 92101
Tel: (619) 800-4214
Email: nadir.ahmed@noalaw.net

Attorneys for Plaintiff and the Proposed Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| *MARK FLOLO, on behalf of himself and all others similarly situated,*<br><br>                    Plaintiff,<br><br>v.<br><br>CUCINA & AMORE INC.,<br><br>                    Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff MARK FLOLO, on behalf of himself and all others similarly situated in California and the United States, by his undersigned attorneys, pursuant to this Class Action Complaint against the Defendant CUCINA & AMORE INC., alleges the following:

## <u>NATURE OF THE ACTION</u>

1.     MARK FLOLO (herein "Plaintiff FLOLO" or "Plaintiff"), brings this class action against Defendant, CUCINA & AMORE INC. (herein "Defendant" or "CUCINA & AMORE INC"), for the deceptive practice of marketing its sauces as having "No Preservatives", when they actually contain the preservatives citric acid and/or ascorbic acid.  This action encompasses the following products:

    a.  Pesto Alla Genovese (citric acid and ascorbic acid)
    b.  Bruschetta Artichoke (citric acid and ascorbic acid)
    c.  Whole Artichoke Hearts (citric acid)
    d.  Piquillo and Artichoke Bruschetta (citric acid)
    e.  Pesto All Firenze (citric acid and ascorbic acid)
    f.  Sun-dried Tomatoes Bruschetta (citric acid)
    g.  Pequillo Peppers & Mango Salsa (citric acid and ascorbic acid)
    h.  Basil Pesto Truffle Sauce (citric acid and ascorbic acid)
    i.  Artichoke Truffle Sauce (citric acid and ascorbic acid)
    j.  Sundried Tomato Truffle sauce (citric acid and ascorbic acid)
    k.  Pesto Alla Siciliana (citric acid and ascorbic acid)
    l.  Any other CUCINA & AMORE product that claims to have "No Preservatives" despite containing citric acid, ascorbic acid, and/or any other preservatives. (collectively, the "Products"; individually, a "Product")

*See* **Exhibit A**.


2.      The false misrepresentations are made both on the Products' packaging wherever the Products are sold online.

3.     By marketing the Products as having "No Preservatives", Defendant wrongfully capitalizes on and reaps enormous profits from consumers' strong preference for food products made free of preservatives.

4.     Plaintiff FLOLO bring this proposed consumer class action on behalf of himself and all other persons nationwide who, from the applicable limitations period up to

and including the present ("Class Period"), purchased Defendant's Products for consumption.

5.     Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade/business practices, and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, ConnStat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1*, et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and De1ceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

22) Massachusetts Unfair and Deceptive Practices Act, Mass. Laws ch. 93A;

23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*

24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*

33) New York Deceptive Acts and Practices Act,Law §§ 349, *et seq.;*

34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.ILaws § 6-13.1-1, *et seq.;*

41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

43) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

6.     Defendant has been unjustly enriched as a result of its conduct. For these reasons, Plaintiff seeks the relief set forth herein.

## **JURISDICTION AND VENUE**

7.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

8.     The Court has personal jurisdiction over Defendant because its Products are designed, manufactured, advertised, marketed, distributed and sold throughout California State; Defendant engages in the wrongdoing alleged in this Complaint throughout the United States and California, where it has its principal place of business; Defendant is authorized to do business in California State; and Defendant has sufficient minimum contacts with California and/or otherwise has intentionally availed itself of the market in California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within California.

9.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b) because a substantial part of the events giving rise to Plaintiff FLOLO'S claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff FLOLO purchased Defendant's Products in Alameda County. Moreover, Defendant distributed, advertised and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

*Plaintiff*

10.     Plaintiff FLOLO is, and at all times relevant hereto has been, a citizen of California and a resident of Alameda County. On March 29, 2018, Plaintiff FLOLO purchased the 7.9 oz. CUCINA & AMORE Sundried Tomato Pesto Sauce for personal consumption. Plaintiff FLOLO purchased the sauce at a Safeway supermarket on 4495 First Street in Livermore, California for the premium price of $3.99. Plaintiff FLOLO made this purchase in reliance on the representation on the container that the product was free of preservatives. As a result of Defendant's deceptive conduct, Plaintiff FLOLO was injured when he paid money for a sauce that did not deliver the qualities it promised, and misled him as to its contents. He would not have purchased the sauce had he known the truth. Plaintiff FLOLO is willing to purchase the Products in the future, but, he could not rely on the truthfulness of the packaging should he encounter the Products in the future, absent corrective changes to the packaging.

*Defendant*

11.     Defendant CUCINA & AMORE INC. is a corporation organized under the laws of California with its principal place of business and address for service of process at 1941 Benton Lane, Novato CA 94945.

12.     Defendant develops, markets, and sells food products under the "CUCINA & AMORE" brand name throughout the United States. The advertising for the Products,

relied upon by Plaintiff and the Class, are prepared and/or approved by Defendant and its agents, and are disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertisements for the Products are designed to encourage consumers to purchase the Products and misleads the reasonable consumer, i.e. Plaintiff and the Class. Defendant owns, manufactures, distributes, creates, and/or authorizes the unlawful, fraudulent, unfair, misleading, and deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

**Defendant Markets Their Product As Free of Preservatives Even Though They Contain The Preservatives Citric Acid And Ascorbic Acid**

13.    The front labels of the Products represent that the products have "No preservatives" when they actually contain the preservatives citric acid and ascorbic acid.

14.    The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. § 101.22(a)(5)

15.    Citric acid and ascorbic acid have precisely this effect.

16.    The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[1]  The scientific evidence and FDA statements cited below establish that citric acid and ascorbic acid tend to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for which these substances are added

---

[1] http://www.macmillandictionary.com/us/dictionary/american/tend (last accessed 01/03/2018)

to the Products. Citric acid and ascorbic acid do not fall into any of the regulatory exemptions from the definition of a preservative.

17.    The FDA expressly classifies citric acid and ascorbic acid as preservatives in its Overview of Food Ingredients, Additives, and Colors, on the FDA website:

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | **Ascorbic acid, citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm. (last accessed 07/05/2017).

18.    Ascorbic acid is also listed on the FDA's regulatory listing of chemical preservatives.  *See* 21 CFR § 182.3013 (Subpart D).

19.    The FDA's classification of citric acid and ascorbic acid as preservatives is further confirmed by its Warning Letter, dated October 6, 2010, to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites":

The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22.

*See* **EXHIBIT B**, FDA Warning Letter dated October 6, 2010 (emphasis added).

20. Citric acid's status as a preservative is also acknowledged by insiders in the preservative manufacturing and distribution industries. FBC Industries, Inc., a manufacturer and supplier of FCC grade citric acid additives, acidulants, buffering agents and preservatives for the food and beverage industry describes citric acid's function: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[2]

21. The online magazine livestrong.com explains how ascorbic acid functions as a preservative:

> Preservatives are divided into three categories: Antimicrobials, antioxidants and ascorbic acid. Antimicrobials prevent bacterial, mold and yeast development. Antioxidants preserve fats, keeping them from going rancid. Ascorbic acid, more commonly known as vitamin C, falls in the third group as a preservative that stops foods from continuing to ripen, an aging process that leads to decay.
>
> **About Ascorbic Acid**
> Ascorbic acid is a water-soluble vitamin with antioxidant properties. Inside your body, the nutrient preserves cell integrity by neutralizing free radicals, which are toxic molecules that can damage healthy cells and cause disease.

---

[2] http://www.fbcindustries.com/Citric_Acid.aspx (last accessed 01/03/2018)

## Preserving Properties

Ascorbic acid neutralizes oxygen when it comes into contact with it. Oxygen allows foods to continue to ripen, an aging process similar to the one people go through that ends in death. Oxygen is also vital for many microorganisms to thrive, some of which cause decay. Ascorbic acid slows or neutralizes these events. The substance blocks cured meat's propensity to form carcinogens called nitrosamines, for example. In the process, the vitamin also preserves the flesh's red color. In addition, ascorbic acid preserves flavor.

## Food-Preservation Mechanism
Canned vegetables, bottled juices, jams and other preserved fruit are processed foods manufacturers protect with ascorbic acid. The vitamin's acidity makes it hard for the enzyme phenolase to act. Phenolase accelerates oxidation, a chemical process in which oxygen level rises, resulting in decay. This is also the process that ascorbic acid combats.[3]

## Plaintiff's Claims Are Not Preempted By The FDCA

22.    Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is consistent with that of the FDA (see above).  Moreover, FDA regulations specifically note that claims like "No Preservatives" are non-nutritive claims that are not governed by 21 C.F.R. § 101.13.  *See* 21 C.F.R. § 101.65(b)(2).  Since the FDA has not issued specific standards governing when "No Preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations. Accordingly, Plaintiff's claim cannot possibly be preempted. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("[P]reemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements").

[3]http://www.livestrong.com/article/496950-is-ascorbic-acid-a-preservative/

**Defendant's Misrepresentations Are Material To A Reasonable Consumer, And Were Relied Upon By Plaintiff And The Class**

23.    Plaintiff and Class members reasonably relied on Defendant's representations that the Products are free of preservatives.

24.    Defendant's "No Preservatives" misrepresentations are misleading and deceive reasonable consumers. At the point of sale, Plaintiff and Class members did not know, and had no reason to know, that the Products are misbranded as set forth herein.

25.    A representation that a product has "No Preservatives" is material to a reasonable consumer when deciding to purchase it. Plaintiff did, and a reasonable consumer would, attach importance to whether Defendant's Products have "No Preservatives" because it is common knowledge that consumers prefer to avoid foods with potentially unhealthy additives (see consumer behavior research below).

26.    The marketing research firm Mintel reports that more and more Americans are concerned to avoid food containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that **84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods**. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).

> Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[4]

27.    Defendant would not include the representations on the front labels of the Products if these representations would not influence consumer behavior.

_____

[4] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed 01/03/2018)

**Defendant Has An Intent To Mislead Plaintiff And The Class**

28.    Defendant knew that its "No Preservatives" claims are misleading.

29.    Upon information and belief, Defendant retains food scientists who can apprise it of the preservative properties of citric and ascorbic acids.

30.    Given the premium that consumers attach to preservative-free foods (see below), Defendant has a natural interest in misleading consumers as detailed above, as its deceptions and misleading omissions provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

**Plaintiff and the Class Were Injured As A Result of Defendant's Misrepresentations**

31.    Plaintiff FLOLO and the Class were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that were represented to them as preservative-free, and then received Products that were preservative-laden, which have significantly less value. Plaintiff FLOLO and the Class were thus deprived of the benefit of their bargain. They would not have purchased the Products or would only have been willing to pay less for them, had they known the truth. Plaintiff and the Class were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

32.    By representing that the Products have "No Preservatives", Defendant seeks to capitalize on consumers' preference for less processed foods with fewer additives and the association between such products and a wholesome way of life. Consumers are willing to pay more for less processed products with no additives because of this association, as well as the perceived higher quality, health, and safety benefits associated with products labeled as being free of preservatives.

33.     Alternet.org reports on research that shows that most Americans are willing to pay a premium price for healthier food options:

Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.

When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[5]

34.     Defendant has a natural interest in misrepresenting its Products as free of preservatives given these trends addressed above, despite the presence of citric acid and/or ascorbic acid. The Products' misrepresentations provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff FLOLO brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting in:

All persons or entities who made retail purchases of Products in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. (the "Nationwide Class")

---

[5] http://www.alternet.org/food/8-food-trends-watch-2016 (last accessed 07/05/2017)

36. In the alternative Plaintiff FLOLO seeks to represent a class consisting in:

All persons or entities who made retail purchases of Products in California during the applicable limitations period, and/or such subclasses as the Court may deem appropriate. (the "California Class")

37. The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned

38. Plaintiff FLOLO reserves the right to revise the Class definition based on facts learned in the course of litigating this matter.

39. This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiff FLOLO at this time, he believes that there are millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

40. Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

i. Whether claiming that Products have "No Preservatives" when they actually contain citric acid and/or ascorbic acid is misleading;

ii. Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

iii. Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, marketing, advertising and/or sale of Products;

iv. Whether Defendant's labeling, marketing, advertising and/or selling of Products constitutes an unfair, unlawful or fraudulent practice;

v.    Whether Defendant deprived Plaintiff and the Classes of the benefit of their bargain because the Products purchased had less value than what Defendant warranted;

vi.   Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

vii.  Whether Defendant should be barred from marketing its Products as having "No Preservatives";

viii. Whether Defendant must disgorge any and all profits it has made as a result of its misconduct;

ix.   The appropriate measure of damages and/or other relief;

x.    Whether Defendant should be enjoined from continuing its unlawful practices.

41.    Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and other Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal law, California law, and the laws of the other 48 states and the District of Columbia. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class members were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of all Class members and are based on the same legal theories.

42.    Plaintiff will fairly and adequately represent and pursue the interests of the Classes and has retained competent counsel experienced in prosecuting class actions. Plaintiff understands the nature of his claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiff nor

Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.

43. Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the Class members. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiff and his counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Classes.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

45. The prosecution of separate actions by individual Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

46. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refuses to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

47. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members, and a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy.

48.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Classes as a whole. Defendant's systematic policies and practices also make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, (Cal. Civ. Code § 1750, et seq.)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent California consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)**

49.     Plaintiff FLOLO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

50.     Plaintiff FLOLO brings this claim individually and on behalf of the other Class members for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

51.     Plaintiff FLOLO and Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff FLOLO and Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiff FLOLO and Class members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

52.     Products that Plaintiff FLOLO and other Class members purchased from Defendants were "goods" within the meaning of Cal. Civ. Code § 1761(a).

53.     Defendant's actions, representations, and conduct violated and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

54.     Defendant violates federal and California law because the Products claim to have no preservatives, when they actually contain citric acid and/or ascorbic acid.

55.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have qualities which they do not have.

56.     Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

57.     Plaintiff FLOLO and Class members are not sophisticated experts about the corporate branding, labeling and packaging practices. Plaintiff FLOLO and the Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

58.     Plaintiff FLOLO and the Class suffered injuries caused by Defendant because (a) they were denied the benefit of their bargain due to Defendant's deceptive package misrepresentations; (b) the Products did not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

59.     On or about July 10, 2018, prior to filing this action, a CLRA notice letter was sent to Defendant which complies in all respects with California Civil Code § 1782(a). Plaintiff FLOLO sent CUCINA & AMORE INC., on behalf of himself and the proposed Class, a letter via certified mail, return receipt requested, advising Defendant that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  *See* **Exhibit C**.[6]

60.     Plaintiff FLOLO seeks damages, restitution, and injunctive relief for these violations of the CLRA.  Defendant should be enjoined from representing that the Products contain "No Preservatives."

## COUNT II.

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,
### (California Business & Professions Code §§ 17200, et seq.)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent California consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)**

61.     Plaintiff FLOLO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

62.     Plaintiff FLOLO brings this claim individually and on behalf of the members of the Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

63.     The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

---

[6] The CLRA letter is dated July 10, 2017.  But this was a typo.  The letter was sent in July of 2018.

64.     Defendant violated and continues to violate federal and California law because the Products advertise having no preservatives when they actually contain citric and/or ascorbic acid.

65.     Defendant's business practices, described herein, violated and continue to violate the "unlawful" prong of the UCL by violating Section 403(r) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 343(d), California Health & Safety Code § 110690, the CLRA, and other applicable law as described herein.

66.     Defendant's business practices, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers. Defendant's deceptive advertising offends the public policy advanced by the FDCA to ensure that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

67.     Plaintiff FLOLO and other Class members are not sophisticated experts about the corporate branding, labeling, and packaging practices of the Products. Plaintiff FLOLO and members of the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

68.     Plaintiff FLOLO and other Class members lost money or property as a result of Defendant's UCL violations because (a) they were denied the benefit of their bargain due to Defendant's deceptive package misrepresentations; (b) the Products do not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

# COUNT III.

## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,
(California Business & Professions Code §§ 17500, et seq.)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of the other states and the District of Columbia to the extent California consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)**

69.     Plaintiff FLOLO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

70.     Plaintiff FLOLO bring this claim individually and on behalf of the Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

71.     Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

72.     Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq*. in that the product packaging was intended as inducements to purchase Defendant's Products. Defendant knew that these statements were inaccurate and misleading.

73.     Defendant violates § 17500, *et seq*. by misleading Plaintiff FLOLO and the Class into believing the Products have no preservatives.

74.     Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that its representations of the Products are false and misleading.

75.     Plaintiff FLOLO and other Class members lost money or property as a result of Defendant's FAL violations because (a) they were denied the benefit of their bargain due to Defendant's deceptive label misrepresentations; (b) the Products did not have the qualities promised, and (c) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations.

## COUNT IV

## COMMON LAW FRAUD

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent California common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)**

76.     Plaintiff FLOLO realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

77.     Defendant intentionally makes materially false and misleading representations regarding the nature of the Products.

78.     Plaintiff and Class members reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Products contain preservatives.  They would not have purchased the Products had they known Defendant's "No Preservative" claims were false.

79.     Defendant knew and intended that Plaintiffs and the Class members would rely on its misrepresentations.

80.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

81.     Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for relief and judgment against Defendant as follows:

(A)    For an Order certifying the Nationwide Class or, alternatively, the California Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class;

(B)    For an Order declaring the Defendant's conduct violates the statutes referenced herein;

(C)    For an Order finding in favor of Plaintiff and members of the Class;

(D)    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(E)    For prejudgment interest on all amounts awarded;

(F)    For an Order of restitution and all other forms of equitable monetary relief;

(G)    For injunctive relief enjoining Defendant from representing that the Products are preservative-free;

(H)    For an Order awarding Plaintiff and members of the Class their reasonable attorneys' fees and expenses and costs of suit; and

(I)    For such other and further relief as the Court deems just and proper.

# DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demand a jury trial on all claims so triable.

DATED: October 14, 2018

Respectfully submitted,

*/s/ C.K. Lee*
C.K. Lee, Esq.

*/s/ Nadir O. Ahmed*
Nadir O. Ahmed, Esq.

*Attorneys for Plaintiff and the Class*